UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JENETTA MCGUIRE,

          Plaintiff,

                                    Case No. 8:08-cv-25-T-33EAJ
v.

BRINKER FLORIDA, INC.,D/B/A,
ROMANO'S MACARONI GRILL, INC.,
now known as BRINKER RESTAURANT
CORPORATION,

          Defendants.
_____/

**ORDER**

     This matter comes before the Court pursuant to
Defendants' motion for summary judgment (Doc. # 15), filed
on November 3, 2008. Plaintiff filed a response in
opposition to the motion for summary judgment on November
24, 2008. (Doc. # 23).  Defendants filed a reply memorandum
on January 16, 2009. (Doc. # 35).

     After due consideration and for the reasons stated in
this Order, the motion for summary judgment is denied.

**I.    Factual Allegations**

     Plaintiff worked as a server for Romano's Macaroni
Grill Restaurant located in Tampa, Florida from February 9,

2005, until approximately June 22, 2006. (McGuire Dep. Doc. # 16 at 100:18-19). Romano's Macaroni Grill is owned and operated by Defendants Brinker Florida, Inc., Brinker Restaurant Corporation, and Brinker International Payroll Company. (Doc. # 15 at 3).

During her employment as a server, Plaintiff was supervised by Brian Neel, and Neel was supervised by the general manager, Stephen Payton. (McGuire Dep. Doc. # 16 at 48:1-8). In addition, Plaintiff worked with Jeremy Ginsberg. (Id. at 48:9-21). Ginsberg was not her direct supervisor, but, as kitchen manager, he held a higher position than Plaintiff at the restaurant. (Id.).

Plaintiff's supervisors at the restaurant were responsible for reviewing the performance of the restaurant's employees, including Plaintiff, and documenting any deficiencies in performance. (Payton Dep. Doc. # 17 at 10:12-13). The restaurant's managers utilized the restaurant's "Red Book" (the manager's daily activity log book) to document problems. (Neel Dep. Doc. # 18 at 79:1-25). However, not all incidents were reported in the Red Book. (Payton Dep. Doc. # 17 at 38:13-20).

Entries in the Red Book reflect that, on July 3, 2005,

Plaintiff had a "rough night" and that there was poor teamwork on the floor. (Doc. # 19-2 at 4). The Red Book also reveals that Plaintiff failed to come to work and failed to notify management that she would be absent on July 4, 2005. (Doc. # 19-2 at 5). On June 2, 2006, it appears that Plaintiff also failed to come to work and failed to report her absence to management. (Doc. # 19-2 at 6).

Deposition testimony of the parties indicates that, in addition to these reported incidents, Plaintiff was often late to work throughout the course of her employment. Neel testified that she was chronically late. (Neel Dep. Doc. # 18 at 47:4-24). Plaintiff does not dispute this, and she admitted in her deposition that she has a "major punctuality problem." (McGuire Dep. Doc. # 16 at 52:19-20).

In addition, on May 27, 2005, a customer called Defendants' customer service hotline to complain about Plaintiff as follows:

> We were in there yesterday (5/26/05) and my wife has a bad back so after our meal she went to take her medication in the restroom. Her medication is Vicodin. While she was in there our server, who was also in there, asked my wife if she could buy some of them from her. When my wife abruptly declined the girl then pulled out a bottle of pills and said, "Well, I have percocet. Would you like to trade?" My wife again declined. . . . This girl was my server and her name was Jenatta I

think. . . . I just know that what she asked of my
wife is highly illegal and thought you would like
to know.

(Doc. # 19-2 at 7).

During her deposition, Plaintiff denied the restroom
incident. (McGuire Dep. Doc. # 16 at 56:17-21). She offered
an alternative explanation. Plaintiff believes that a friend
of a friend, who happened to be upset at Plaintiff, made the
call to the hotline in order to damage Plaintiff's
reputation at work. (Id. at 57:1-23). Plaintiff testified
that the restroom incident caused a stir at work for
approximately two days and was then dropped. (Id. at 59:19-
23). It appears that Defendants did not seriously
investigate the matter, despite the fact that Plaintiff was
once convicted for cocaine trafficking and was living in a
half-way house during a portion of her tenure as server for
Defendant. (McGuire Dep. Doc. # 16 at 12:15-19, 16:1-8; Doc.
# 16-3 at 2).

In May of 2006, while employed by Defendants, Plaintiff
discovered that she was pregnant. (McGuire Dep. Doc. # 16 at
60:11-14, 71:15-18).[1] Plaintiff immediately informed Neel

---

[1] During her deposition, Plaintiff testified that she
reported her pregnancy to management in May 2005 and May 2006.
She also vacillated on the month that she reported her

and other co-workers of her pregnancy. (<u>Id.</u> at 60:15-18).
She testified that she informed her manager and co-workers
because she wanted to alert them so that they would know the
cause if she became ill at work. (<u>Id.</u> at 60:11-18; 62:2-
10). She testified that she did not seek "special
treatment" just because she was pregnant. (<u>Id.</u> at 61:5-8).

Plaintiff was not the only pregnant woman working at
the restaurant. Plaintiff recalled that two other pregnant
women, a hostess and a fellow server, were employed at the
restaurant during Plaintiff's employment for Defendants.
(<u>Id.</u> at 127:1-24).

Neel testified that he, along with other members of the
restaurant team, pitched in to help Plaintiff with her
duties after learning that she was pregnant. (Neel Dep. Doc.
# 18 at 43:19-25, 44:1-8). Specifically, Neel testified
that he and others would help carry heavy items for her.
(<u>Id.</u>). It should be noted that, from the beginning of her
employment, Plaintiff refused to carry trays of food, she

pregnancy, sometimes referring to May and sometimes referring
to June. This Court determines that references to 2005 were
made in error, and that, since Plaintiff gave birth to her
child on December 30, 2006, Plaintiff must have reported her
pregnancy to management in or around May 2006, and not May
2005. (McGuire Dep. Doc. # 125:12-13).

preferred to carry several individual plates at a time. (McGuire Dep. Doc. # 16 at 112:4-24, 113:1-22). Plaintiff was reminded by management that the restaurant's policies required her to carry trays, rather than individual plates. (Id.). Plaintiff testified that her managers did not seem to care about her preference for carrying plates, rather than trays, until she became pregnant. (Id. at 112:12-14). Along the same lines, Plaintiff testified that she was frequently late to work, but that she was scolded more sternly for her tardiness after she became pregnant. (Id. at 117:8-11).

Plaintiff testified that Jeremy Ginsberg, the kitchen manager, whom Plaintiff personally disliked, commented to her that being pregnant did not excuse Plaintiff from her duties at work. (Id. at 113:24-25, 114:1-11). Ginsberg's comments were apparently sparked by Plaintiff's refusal to carry a 25-pound bucket of ice at Ginsberg's request. (Id.).

On June 13, 2006, while Plaintiff was performing her duties as server, a customer complained to Neel about Plaintiff's performance. (Id. at 75:5-25). Specifically, the customer asked Plaintiff to describe a certain menu item (a sandwich), and Plaintiff's description of the sandwich

misled the customer. (<u>Id.</u>).  The customer was not happy with the sandwich, and she sent it back to the kitchen.  (<u>Id.</u>).

Neel instructed Plaintiff to meet him in the kitchen, and, according to Plaintiff, Neel screamed and cursed at her in the presence of other restaurant workers. (<u>Id.</u> at 79:11-13).  Plaintiff testified that Neel was screaming so loudly that she thought that the restaurant's customers could have heard him and that Plaintiff felt "an inch tall." (<u>Id.</u> at 76:1-24).  Plaintiff was embarrassed and crying. (<u>Id.</u>).  She asked Neel if she could go home. (<u>Id.</u> at 76:1).  Neel responded that she could leave for the evening.  Later, he told one of Plaintiff's friends to tell Plaintiff that Plaintiff would have to speak to Payton, the general manager, before she could come back to work. (<u>Id.</u> at 81:14-16).  Plaintiff testified that Neel had never screamed and cursed at her like that before the incident. (<u>Id.</u> at 75:16-18).  On her way out the door, Plaintiff remarked to one of her co-workers that Neel was "being a dick." (<u>Id.</u> at 79:20-22).  Neel overheard the comment and expressed his displeasure. (<u>Id.</u>).

Shortly after the June 13, 2006, incident, Plaintiff met with Payton. (<u>Id.</u> at 83:19-24).  Payton spoke with her

for a few minutes, but stated that he did not want to speak to her about the incident unless Neel was also present. (<u>Id.</u>). Payton wanted to get both sides of the story before deciding whether Plaintiff should be permitted to return to work. (<u>Id.</u>). Plaintiff testified that, during the first meeting with Payton, when Neel was not present, Plaintiff expressed to Payton that she believed that she was being treated differently because she was pregnant. (<u>Id.</u> at 102:1-13). Payton testified that he recalled having this conversation with Plaintiff but that he advised Plaintiff that "She needed to be at work on time, whether she was pregnant or not." (Payton Dep. Doc. # 17 at 54:4-25, 55:1-25, 56:1).

Further, during the same one-on-one meeting between Plaintiff and Payton, Plaintiff asserts that Payton assured Plaintiff that her job was safe. (McGuire Dep. Doc. # 16 at 84:5). However, a few days later, Neel, Payton, and Plaintiff met to discuss the June 13, 2006, incident, and Payton terminated Plaintiff's employment.

During the meeting in which Plaintiff was terminated, Plaintiff and Neel presented their sides of the story. (<u>Id.</u> at 84:22-25). Then, according to Plaintiff, Payton stated,

"None of this is relevant. The fact of the matter is that a lot of the managers are not comfortable working with you [Plaintiff]. When you have the baby, if you'd like to come back, we will give you your job back." (<u>Id.</u> at 85:20-25, 86:1).

Neel testified that Payton did, in fact, make these remarks, or similar remarks. (Neel Dep. Doc. # 18 at 72:2). However, Neel testified that Payton's remark about returning to work after having the baby was really about the passage of time: "The manager would have meant give it time, you know, for – just time and come back later on in time and we'll talk about maybe bringing you back, but at this time, no. It had nothing to do with her having the baby. It just was a general time frame." (<u>Id.</u> at 71:1-6).

Payton denied that he made the statement concerning the birth of Plaintiff's baby. Instead, Payton testified that, when he fired her, he stated Plaintiff "was more than welcome to reapply after she was able to get her things in order." (Payton Dep. Doc. # 17 at 36:7-11). Payton testified that "getting her things in order" meant getting transportation issues (that is, transportation to and from work) resolved. (<u>Id.</u> at 15-18). Neel testified that he

never heard of Plaintiff having transportation issues, and that her issues were not feeling well due to her pregnancy. (Neel Dep. Doc. # 18 at 119:16-25, 120:1-7).

On June 27, 2006, Payton signed a "Termination of Employment" document reflecting that Plaintiff was terminated on June 27, 2006, for "insubordination/refused to do job" and "voluntarily sent herself home on a shift." (19-2 at 9). It appears that Plaintiff did not sign the form.

## II.  **Plaintiff's EEOC Charge and Complaint**

Thereafter, on April 4, 2007, Plaintiff filed a charge of discrimination with the EEOC. Her charge stated:

> I was employed by Romano's Macaroni Grill as a Server from February 9, 2005 to June 22, 2006. In early June, 2006, I learned that I was pregnant and informed my managers. Thereafter, I began to be treated differently by one of my managers, who would yell at me and make rude comments in front of the other employees. I complained to my General Manager on or about June 16, 2006, but nothing was done. Shortly thereafter, the same manager that I complained about confronted me and was cursing and yelling at me in front of other employees. I became upset and asked to go home. The next day, I was informed by the General Manager that I was being let go but could come back to work once my baby was born. . . . I was told that my manager, Brian Neel, was uncomfortable working with me but I could come back to work once my baby was born.

(Doc. # 16-17 at 1).

Thereafter, on December 4, 2007, Plaintiff filed her

-10-

complaint in state court, and it was removed to this Court by Defendants on January 7, 2008. (Doc. ## 1, 2). Plaintiff filed an amended complaint on January 22, 2008. (Doc. # 6). Plaintiff's amended complaint contains two counts against Defendants. Count one alleges pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"). Count two alleges retaliation in violation of Tile VII.

On February 5, 2008, Defendants filed their answer and affirmative defenses. (Doc. # 8). Notably, Defendants listed the following non-discriminatory reasons for Plaintiff's termination as an affirmative defense to this action: "unsatisfactory work performance, as demonstrated by chronic tardiness, walking out in the middle of a shift, poor customer service and insubordination." (Doc. # 8 at 4).

As for Plaintiff's pregnancy discrimination allegation, Defendants argue that Plaintiff failed to establish a prima facie case of discrimination because Plaintiff has not identified a rule that was applied to her differently due to her status as being pregnant. In the alternative, in the instance that this Court determines that Plaintiff

-11-

established her prima facie case, Defendants assert that they offer legitimate, non-discriminatory reasons for terminating Plaintiff, and Plaintiff has not produced evidence establishing that these reasons are pretextual.

As for Plaintiff's retaliation claim, Defendants assert that there is no evidence that Plaintiff engaged in protected activity which could have been the cause of any retaliatory conduct.

On the other hand, Plaintiff asserts, as to her discrimination claim, that Payton's comment regarding returning to work after the birth of her baby constitutes direct evidence of pregnancy discrimination. In addition, Plaintiff asserts that circumstantial evidence also supports her pregnancy discrimination claim. As for retaliation, Plaintiff argues that she informally complained to Payton about being treated differently due to her pregnancy and was terminated only days later.

This Court will address these arguments and others in turn.

## III. **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving

party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied,

-14-

456 U.S. 1010 (1982).

## IV. **Analysis**

### A. **Pregnancy Discrimination**

Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act amended Title VII by providing that the prohibition against employment-related discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, or related medical conditions. Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312-1313 (11th Cir. 1994).

The Eleventh Circuit has held that "The PDA does not require that employers give preferential treatment to pregnant employees." Spivey v. Beverly Enter. Inc., 196 F.3d 1309, 1312 (11th Cir. 1999). Further, "[A]n employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." Id. at 1313.

The analysis applied to pregnancy discrimination cases is the same as analysis in other Title VII sex discrimination cases. Armstrong, 33 F.3d at 1312. It is well settled that "there are two types of discrimination actionable under Title VII:" disparate treatment and disparate impact. Id. at 1313. Disparate treatment was defined by the Supreme Court as occurring when:

> The employer simply treats some people less favorable than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact or differences in treatment. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 (1977).

The second type of Title VII discrimination, disparate impact, involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. at 335-336.

In this case, Plaintiff asserts that she was discriminated against due to her pregnancy, and she does not allege that a facially neutral policy had a disparate impact on her as a pregnant person. Thus, this is a disparate

treatment case.

A prima facie case of pregnancy discrimination in disparate treatment cases is established when a plaintiff can show that she "(1) was a member of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a different application of work or disciplinary rules." <u>Sampath v. Immucor, Inc.</u>, 271 F. App'x 955, 960 (11th Cir. 2008).

Plaintiff may employ one of three means to establish her prima facie case of disparate treatment employment discrimination under Title VII as amended by the PDA: (1) direct evidence of discriminatory intent, (2) statistical analysis evidencing a pattern of discrimination, or (3) circumstantial evidence meeting the test established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Verbraecken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

## 1. Direct Evidence

Direct evidence is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." <u>Castle v. Sangamo Westin, Inc.</u>, 837 F.2d 1550, 1558 n.13 (11th Cir. 1988). An example of direct evidence

in an age discrimination case, for example, would be a scrap of paper saying, "Fire Rollins—she is too old." Id.

The Eleventh Circuit has noted, "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)(quotations omitted). Further, if the evidence suggests, but does not prove, discriminatory motive, it is circumstantial evidence rather than direct evidence. Burrell v. Board of Tr., 125 F.3d 1390, 1393 (11th Cir. 1997). For statements to qualify as direct evidence of discrimination, such statements must come from a decision maker. Bass v. Bd. of County Comm'r, 256 F.3d 1095, 1105 (11th Cir. 2001).

If a plaintiff comes forward with direct evidence of discriminatory intent, an employer must prove that the same employment decision, in the present case, termination, would have been made absent any discriminatory intent. Young v. Gen. Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).

Here, Plaintiff argues that Payton's alleged remarks (1) that Plaintiff could return to her job back after the birth of her baby and (2) that some of the managers were not

comfortable working with Plaintiff in her "condition" constitute direct evidence of pregnancy discrimination. Upon close scrutiny of the comments and upon review of <u>Barrett v. Captial Acquisitions & Mgmt. Co.</u>, 3-62092-CIV, 2005 U.S. Dist LEXIS 45129 (S.D. Fla. Jan. 26, 2005), and other discrimination cases, this Court determines that Payton's alleged comments constitute circumstantial evidence, rather than direct evidence.

In the <u>Barrett</u> case, the plaintiff, Barrett, worked as a debt collector in an office setting. <u>Id.</u> at *3. After approximately three months of employment, Barrett learned that she was pregnant. <u>Id.</u> at *4. She was placed on bed rest at the end of her pregnancy; however, Barrett still came into work at least some of the time, and she used sick leave and vacation leave for her absences. <u>Id.</u> One day, she did not report to work. Instead she visited her physician, and she called her employer from the physician's office to explain that she was put on bed rest until further notice. <u>Id.</u> *5. On that same day, she delivered a "doctor's note" to her employer and that note was faxed to the corporate office. <u>Id.</u> Barrett's employer testified that Barrett was out of sick and vacation leave and that she was

-19-

not eligible for maternity leave. <u>Id.</u> Barrett testified that one of her managers told her that "her job was open when she wanted to return." <u>Id.</u>

One month later, the human resources department told one of Barrett's managers that "Barrett should be written up and terminated pursuant to [the company's] no call/no show policy." <u>Id.</u> at *6. Barrett was immediately terminated and her termination report stated the reason was "voluntary job abandonment." <u>Id.</u> Shortly thereafter, an unemployment agency telephoned Barrett's former employer and one of Barrett's former coworkers stated that "Barrett was terminated because she was pregnant." <u>Id.</u> at *7. Barrett's former employer sent a form to the unemployment agency stating "Barrett had not been here a year so she did not qualify for a leave of absence. We could not keep her position open, so we had to discharge her due to her pregnancy." <u>Id.</u> at *14.

Barrett sued her former employer for pregnancy discrimination, and argued that the statements to the unemployment agency, indicating that Barrett was fired "due to her pregnancy" constituted direct evidence of discrimination. <u>Id.</u>

The district court determined that the statements were circumstantial evidence of discrimination, rather than direct evidence, finding: "the statements require the inference that the sole reason for Barrett's discharge was her pregnancy, and not her eligibility for leave." <u>Id.</u> The district court determined that the statements "suggest, but do not prove" discriminatory motive. <u>Id.</u> at *15.

This Court is similarly called upon to determine whether Payton's alleged statements (that Plaintiff could return to work after her baby was born and that some of the managers were uncomfortable working with Plaintiff in her "condition") constitute direct evidence of discriminatory motive.

While Payton was a decision maker, this Court finds that Payton's comments, if indeed the comments were made, may suggest, but do not prove, discriminatory motive. This is because Payton's remark about possible re-employment after the birth of Plaintiff's baby could also relate to, as suggested by Neel, the passage of time before re-hiring Plaintiff, regardless of her pregnancy. Further, the alleged remark that certain managers were not comfortable working with Plaintiff in "her condition" also may suggest,

but does not prove, discriminatory motive. Her exact "condition" is not specifically identified as pregnancy, and even if it were, the statement does not necessarily mean that the sole reason for her termination was pregnancy. This Court does not evaluate Payton's statements in a vacuum. Payton's remarks were made after a meeting with Plaintiff and Neel, and after considering Plaintiff's conduct, including tardiness, customer service issues, and insubordination. Thus, this Court will evaluate Plaintiff's case under the familiar McDonnell Douglas burden shifting test. 411 U.S. 792.

## 2. Circumstantial Evidence

In analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas and its progeny. See Gamboa v. Am. Airlines, 170 F. App'x 610, 612 (11th Cir. 2006)(citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination against Defendants. McDonnell Douglas, 411 U.S. at 802.

If Plaintiff successfully establishes a prima facie

case of pregnancy discrimination, a rebuttable presumption of discrimination is created and the burden of proof then shifts to Defendants. Id. at 802-03; Dickinson v. Springhill Hosps., Inc., No. 05-16885, 2006 U.S. App. LEXIS 16613, at *6 (11th Cir. June 29, 2006)(citing EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1272 (11th Cir. 2000)).

To rebut the presumption created by Plaintiff's prima facie case, Defendants must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against Plaintiff. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998). However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. "[Defendant] must merely produce evidence that could allow a rational fact finder to conclude" its actions were not motivated by discriminatory animus. Id.

If Defendants produce such evidence, the burden shifts back again to Plaintiff. McDonnell Douglas, 411 U.S. at 802-03. Plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing her prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by

the employer were not the real reasons for the adverse employment decision." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997)(citations omitted).

### 3.  <u>Plaintiff's Prima Facie Case</u>

To establish a prima facie case of pregnancy discrimination, Plaintiff must show that she "(1) was a member of a protected class, (2) was qualified for the job she held, (3) suffered an adverse employment action, and (4) suffered from a different application of work or disciplinary rules." <u>Sampath</u>, 271 F. App'x at 960.

In the <u>Sampath</u> case, Sampath was employed as a software consultant for Immucor. <u>Id.</u> at 956. Sampath learned that she was pregnant, and was thereafter restricted to bed rest due to complications with her pregnancy. <u>Id.</u> Although she was on leave, Sampath voluntarily participated in an audit of Immucor because, as a senior employee, she was most familiar with the auditing process. <u>Id.</u> The audit turned out to be unsuccessful, and Immucor, determined that Sampath provided inaccurate and "materially incomplete information" to the auditors. <u>Id.</u> at 959. Immucor terminated Sampath while she was on maternity leave. <u>Id.</u> A non-pregnant employee, whose participation in the audit was minimal,

replaced Sampath. <u>Id.</u>

The Eleventh Circuit determined that Sampath met her prima facie case as follows: "Sampath was pregnant and thus protected against discrimination . . . . There is no dispute over her qualifications for the job she held. She was discharged. No one else involved with [the audit] was discharged. Finally, Sampath was replaced by Brost, who was not pregnant. . . . Sampath has thereby established a prima facie case of pregnancy discrimination." <u>Id.</u> at 960.

In the present case, it is not disputed that Plaintiff, as a pregnant person, was a member of a protected class. Further, Defendants do not appear to contest that Plaintiff was qualified for the job she held. It is not contested that Plaintiff suffered an adverse employment action, as she was terminated. The fourth prong of Plaintiff's prima facie case, that she suffered from a different application of work or disciplinary rules, is the subject of dispute.

Defendants argue that "Plaintiff has not offered any evidence that employment rules were applied differently to other persons, [and thus] she has not established a case of disparate treatment." (Doc. # 15 at 20). Defendants also point to various portions of Plaintiff's testimony in which

she states that she was not really "bothered" by the alleged
discrimination" (McGuire Dep. Doc. # 103:10-13) and that the
first time that she felt like she was being discriminated
against due to pregnancy was when she was terminated. (Id.
at 72:2-8).

This Court recognizes that Plaintiff testified that she
did not exactly feel discriminated against until she was
terminated. However, the record also contains testimony
from Plaintiff indicating that, while she was frequently
late to work, her managers were more "stern" with her
regarding timeliness after she became pregnant. (McGuire
Dep. Doc. # 16 at 117:8-11).

Further, Plaintiff stated that, since the beginning of
her employment, Plaintiff carried individual plates, rather
than heavy trays, to her customers. (Id. at 112:4-24, 113:1-
22). It was only after she became pregnant, she alleges,
that management scolded her for this practice. (Id.).
Furthermore, it does not seem to be contested that Ginsberg,
the kitchen manager, asked her to pick up a 25-pound bucket
of ice, and when Plaintiff refused due to her pregnancy,
Ginsberg commented that Plaintiff's pregnancy would not
excuse her from performing her duties. (Id. at 113:24-25,

114:1-11).[2]

There is a conflict in the record regarding whether Plaintiff was subjected to a different application of the restaurant's disciplinary rules due to being pregnant.

As argued by Plaintiff, "a reasonable jury could conclude that [Plaintiff] was being treated in a disparate manner due to her pregnancy. At a minimum, there are genuine issues of material fact as to whether Plaintiff was treated differently than similarly situated employees outside of her protected class." (Doc. # 23 at 12). At this stage of the proceedings, this Court must presume that Plaintiff's evidence is true, and this Court must draw all reasonable inferences in Plaintiff's favor. Shotz, 344 F.3d at 1164. With this standard in mind, this Court finds that Plaintiff has presented a prima facie case of pregnancy discrimination.

---

[2] In the Sampath case, Sampath was terminated and was replaced by a non-pregnant woman. 271 F. App'x at 959. The Eleventh Circuit took this fact into consideration in determining that Sampath established a prima facie case of pregnancy discrimination. Id. at 960. In this case, Plaintiff argues that Defendants likely replaced Plaintiff with a non-pregnant employee. Had Defendants replaced Plaintiff with another pregnant woman, this Court is certain that Defendants would have brought such evidence to the table. However, without some evidence on file regarding Plaintiff's replacement, this Court makes no findings on this point.

4. **Defendants' Legitimate Nondiscriminatory Reasons for Termination and Plaintiff's Pretext Arguments**

If Defendants are able to proffer a legitimate non-discriminatory reason for terminating Plaintiff, then Plaintiff must demonstrate by a preponderance of the evidence that Defendants had a discriminatory intent for terminating Plaintiff. <u>Perryman v. Johnson Prod., Inc.</u>, 698 F.2d 1138, 1141 (11th Cir. 1983). Defendants argue that Plaintiff's "failure to call or show up for work, her admittedly frequent tardiness, complaints from customers regarding her service, her final confrontation with Mr. Neel and her leaving her shift early are all incidents supporting a legitimate basis for her termination." (Doc. # 15 at 24). However, Plaintiff's actual termination form gave the following reasons for termination: "insubordination/refused to do job" and "voluntarily sent herself home on a shift." (Doc. # 19-2 at 9).

Within the <u>McDonnell Douglas</u> burden shifting analysis, a plaintiff may show pretext when she is able to demonstrate "such weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's proffered reasons that "a

reasonable factfinder could find them unworthy of credence."
Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276,
1289 (11th Cir. 2005). In this case, the record supports
that Plaintiff was frequently tardy; however, Plaintiff's
termination form did not mention tardiness. Further,
customers complained about Plaintiff's service on at least
one occasion; however, Plaintiff's termination form also
failed to mention customer complaints. The termination form
specifically states that Plaintiff "refused to do her job,"
was insubordinate, and that she sent herself home during a
shift.

The record reflects that, after her confrontation with
Neel, Plaintiff called Neel a "dick." (McGuire Dep. Doc. #
16 at 79:20-22). This conduct likely qualifies as
"insubordination." However, the record reflects that during
the same confrontation, Plaintiff requested to go home, and
Neel gave her permission to do so. (Id. at 76:1, 77:15-20).
Thereafter, she sought to return to work but was promptly
terminated. (Id. at 81:14-16, 82:25, 83:8-25).

As such, this Court finds that there are
inconsistencies and contradictions with respect to
Plaintiff's termination form, which indicated that Plaintiff

sent herself home on a shift. During her termination, she was advised that she could possibly become re-employed after the birth of her child. (<u>Id.</u> at 85:20-25, 86:1). In addition, she was advised that members of her team were uncomfortable working with her in her "condition." Thus, genuine issues of material fact exist with respect to whether Defendants' proffered reasons for terminating Plaintiff are pretextual.

As the movants, Defendants failed to meet their burden under Rule 56 of the Federal Rules of Civil Procedure as to Plaintiffs' pregnancy discrimination claim. Defendants have not shown the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Further, Defendants have not demonstrated that they are entitled to judgment as a matter of law on Plaintiff's pregnancy discrimination claim. Indeed, a reasonable and fair-minded jury could find that Plaintiff was terminated due to her pregnancy, rather than for the reasons proffered by Defendants. Accordingly, this Court denies Defendants' motion for summary judgment on Plaintiff's pregnancy discrimination claim. This Court will now evaluate Plaintiff's retaliation claim.

**B.  Retaliation**

Title VII's retaliation provision prohibits employers from discriminating against their employees because they have opposed employment practices made unlawful by other sections of Title VII. 42 U.S.C. § 2000e-3(a). The goal of this provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," including freedom from discrimination.  Burlington N. & Santa Fe R.R. Co. v. White, 548 U.S. 53, 63 (2006).

Accordingly, "retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)(citations omitted).

Plaintiff asserts that her termination from employment resulted from retaliation, and she has supported her allegations of retaliation against Defendants with circumstantial evidence.  The McDonnell Douglas burden shifting analysis for a retaliation claim is analogous to the burden shifting analysis employed for a discrimination claim when circumstantial evidence is used to allege

-31-

retaliation.  Johnson v. Booker T. Washington Bd. Serv., 234
F.3d 501, 507 at n.6 (11th Cir. 2000); see also James v.
Ala. Dep't of Revenue, 206 F. App'x 869, 871 (11th Cir.
2006).  "If a plaintiff makes out a prima facie case of
retaliation, the burden shifts to the defendant to produce
legitimate reasons for the adverse employment action."
Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th
Cir. 2002).

"If the defendant offers legitimate reasons, the
presumption of retaliation disappears", and "[t]he plaintiff
must then show that the employer's proffered reasons for
taking the adverse action were actually a pretext for
prohibited retaliatory conduct." Sullivan, 170 F.3d at 1059
(internal quotations and citations omitted). "The plaintiff
must [then] prove by a preponderance of the evidence that
the legitimate reasons offered by the employer for taking
the adverse action were not its true reasons." DeLong v.
Best Buy Co., 211 F. App'x 856, 858 (11th Cir. 2006)(citing
Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133,
143 (2000)).

### 1.  Prima Facie Retaliation

"Retaliation is a separate violation of Title VII. To

recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed." Gupta v. Fla Bd. of Regents, 212 F.3d 571, 586 (11th Cir. 2000)(internal citations omitted). In order to establish a prima facie case of retaliation under Title VII a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two events. Pennington v. City of Huntsville, 261 F.3d 1261, 1266 (11th Cir. 2001); Brochu, 304 F.3d at 1155.

If Plaintiff establishes her prima facie case of retaliation, the burden shifts to Defendants to produce "legitimate reasons for the adverse employment action." Johnson, 234 F.3d at 507. If Defendants are able to do so, then Plaintiff must shows that Defendants' reasons are pretextual.

Here, Defendants argue that Plaintiff never engaged in statutorily protected activity. However, Plaintiff testified that she expressed her concerns about pregnancy discrimination to Payton and a few days later, she was

terminated.  Defendants also contend that, even if the Court
determines that Plaintiff engaged in statutorily protected
activity, that there is no causal connection between the
statutorily protected expression and Plaintiff's
termination.  The Court addresses each argument in turn.

### i.  <u>Statutorily Protected Expression</u>

Title VII protects "individuals who have filed formal
complaints," and those "who informally voice complaints to
their superiors or who use their employer's internal
grievance procedures." <u>Rollins v. Fla. Dep't of Law
Enforcement</u>, 868 F.2d 397, 400 (11th Cir. 1989); <u>see also
Hankins v. Air Tran Airways, Inc.</u>, 237 F. App'x 513, at 519
(11th Cir. 2007).  Plaintiff's informal discussion with
Payton regarding unfair treatment due to pregnancy qualifies
as statutorily protected expression for a Title VII
retaliation claim.

### ii.  <u>Adverse Employment Action</u>

In <u>White</u>, the Supreme Court recently held that the
standards for finding adverse employment action in
discrimination and retaliation claims are not the same.
<u>White</u>, 548 U.S. at 67.  Namely, the Supreme Court held that
the threshold for finding a materially adverse employment

-34-

action is less substantial for retaliation claims. Id.; see also Taylor v. Roche, 196 F. App'x 799, 802-03 (11th Cir. 2006)(failure to grant shift change, drawing all reasonable inferences in plaintiff's favor, could be adverse action).

The Eleventh Circuit commented on the White decision as follows, "the Supreme Court . . . defined an adverse employment action in [the] context of a retaliation claim as an action by an employer that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." Wallace v. Ga. Dep't of Transp., 212 F. App'x 799, 802 (11th Cir. 2006)(quoting White, 548 U.S. at 68). Here Plaintiff was terminated. Termination is the ultimate employment decision, and certainly qualifies as an adverse employment action.

### iii.  Causal Connection

In order to establish the requisite causal connection, "a plaintiff must show that the decision makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." Gupta, 212 F.3d at 590 (quotations omitted); see also DeLong, 211 F. App'x at 857-58 ("a plaintiff must generally establish that the decision maker was aware of the protected conduct

-35-

at the time of the adverse employment action.")(citations omitted). In order to establish the requisite causation for a prima facie case of retaliation, circumstantial evidence of a "close temporal proximity may be sufficient to show that the protected activity and the adverse action were not wholly unrelated." Gupta, 212 F.3d at 590(citations omitted).

Plaintiff was terminated within a few days of expressing her concerns about discrimination to Payton. This temporal proximity may be sufficient to permit the inference that the her termination was not wholly unrelated to retaliatory purposes. See e.g. Donellon v. Fruehauf Corp., 794 F.2d 598, 602 (11th Cir. 1986)(mere month lapse between EEOC complaint and discharge sufficient to satisfy prima facie causation requirement for summary judgment purposes); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998)(noting that causation may be established when transfers occur five weeks and two months after complaints); but see Hugdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)(three month lapse, standing alone, insufficient to create inference of causation in ADA retaliation case). For these reasons, Plaintiff has

established sufficient causation for summary judgment purposes, and has stated a prima facie case of retaliation against Defendants.

### 2. **Legitimate Nondiscriminatory Reasons for Termination**

Defendants assert in their motion for summary judgment that Plaintiff was terminated because of tardiness, absences, a confrontation with Neel, insubordination, customer complaints, and walking out on her shift. (Doc. # 15 at 24). On the surface, these reasons seem like sufficient and legitimate reasons for Plaintiff's termination. However, Plaintiff asserts that these reasons are a mere pretext for pregnancy discrimination.

To create a genuine issue of material fact on the question of pretext, Plaintiff "must 'demonstrate that the proffered reason was not the true reason for the employment decision.'" Jackson v. Ala. State Tenure Comm., 405 F.3d 1276, 1289 (11th Cir. 2005)(quoting Burdine, 450 U.S. at 256). Plaintiff may do that "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine,

450 U.S. at 256. In considering Defendants' summary judgment motion, "[t]he district court must evaluate whether the plaintiff demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)(internal quotations and citations omitted).

Plaintiff's pretext arguments are supported by the fact that, when she was terminated, her supervisor commented on her pregnancy and suggested that she could resume her employment after her pregnancy was over.

The Court finds that there is a conflict in the evidence concerning Defendants' alleged reasons for terminating Plaintiff, and the Court determines that a reasonable jury could find that the reason for Plaintiff's termination was her statutorily protected expression, rather than the reasons proffered by Defendants. Accordingly, summary judgment on Plaintiff's retaliation claim is not appropriate.

For the foregoing reasons, summary judgment on

Plaintiff's discrimination and retaliation claims is not warranted, and Defendants' motion for summary judgment is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' motion for summary judgment (Doc. # 15) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of March 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record